# EXHIBIT 1

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| SCOTT ICEBERG, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WALMART, INC., a Delaware corporation,<br><br>Defendant. | No.<br><br>**COMPLAINT** |

Plaintiff Scott Iceberg brings this action on behalf of himself against Defendant WALMART, INC., ("Defendant") and makes the following allegations based upon information and belief, except as to the allegations specifically pertaining to himself, which is based on his personal knowledge.

1

## I. NATURE OF THE ACTION

1. This is an RCW 19.86.020 action for damages, injunctive relief, and declaratory relief based on Plaintiff's purchase of Defendant's Great Value Fruit and Grain Cereal Bars (blueberry, apple cinnamon, mixed berry, and strawberry flavors); together, "the Products", which are manufactured, packaged, labeled, advertised, distributed, and sold by Defendant, are misbranded and falsely advertised.

2. Defendant's "Naturally Flavored" and "Natural Flavor with Other Natural Flavors" representations are featured on the Products' labeling in order to induce health-conscious consumers to purchase foods that are free from synthetic flavoring. Defendant markets its Products in a systematically misleading manner by misrepresenting that the Products do not contain unnatural flavoring.

3. Defendant has profited unjustly as a result of its deceptive conduct. Plaintiff therefore asserts claims for violation of RCW 19.86.020, breach of express warranty, and unjust enrichment.

## II. JURISDICTION AND VENUE

4. At all times material to this action, Defendant conducted business within King County and the State of Washington.

5. Venue is proper in this Court under RCW 4.12.025(1) because Defendant presently transacts business in King County and transacted business in King County at the time Plaintiff's causes of action arose.

6. Plaintiff is entitled to declaratory relief pursuant to RCW 7.24.

### III. PARTIES

7. Plaintiff Scott Iceberg is a citizen of Washington who resides at Orcas, Washington. Mr. Iceberg has purchased the Products on numerous occasions over the prior three years, in King, and Snohomish counties, including most recently in or around October 16, 2025, when he purchased Great Value Fruit & Grain Cereal Bars, Blueberry, 1.3 oz, 8 Count at a Walmart in Arlington, Washington, for an approximate price of $3. Plaintiff estimates he purchased the product one hundred and fifty times in the preceding three years. In purchasing the Product, Mr. Iceberg relied on Defendant's false, misleading, and deceptive marketing of the Product as being "Naturally Flavored" and containing "Natural Flavor with Other Natural Flavors". Mr. Iceberg understood that "Naturally Flavored" and containing "Natural Flavor with Other Natural Flavors" meant the Product did not contain any artificial flavors. However, the Product he purchased did contain the artificial flavoring malic acid. Had Mr. Iceberg known the "Naturally Flavored" and containing "Natural Flavor with Other Natural Flavors" representations were false and misleading, he would not have purchased the Product, or, at the very least, would have only been willing to purchase the Product at a lesser price.

8. Defendant Walmart, Inc. is a Delaware corporation with its principal place of business and headquarters in Bentonville, Arkansas.

## IV.     GENERAL ALLEGATIONS

9.      Across the globe, consumers are increasingly attuned to claims that foods are "all natural," minimally processed, or otherwise free of artificial flavors and preservatives.

10.     For example, a 2018 survey by L.E.K. Consulting found that overwhelming numbers of consumers were committed or casual adherents to so-called "clean label" food attributes: "No artificial ingredients" (69 percent); "No preservatives" (67 percent); or "All natural" (66 percent). These were the three most attractive attributes in the consumer survey. Roughly 60 to 70 percent of consumers reported a willingness to pay a price premium for "clean label" foods. See https://www.lek.com/insights/ei/next-generation-mindful-food-consumption.

11.     Defendant Walmart formulates, manufactures, and sells Great Value Fruit and Grain Cereal Bars (blueberry, apple cinnamon, mixed berry, and strawberry flavors).

12.     Walmart is solely responsible for the contents of the Products' labelling.

13.     The front label (or "principal display panel") of the fruit and grain cereal bars prominently state that they are "Naturally Flavored" emphasizing the statement with depictions of real fruits, as shown in this example:





14. All flavors of the Products use depictions of fruits on the front label, as shown above, to reinforce the natural flavoring claim that is being made. A reasonable consumer would understand, and Plaintiff did understand, from these textual and graphical elements on the labels that the Products contain only natural flavorings.

15. These statements are false and/or misleading. All of the Products contain an ingredient known as "malic acid" which is used as a flavoring in the Products. The form of malic acid used in these Products is artificial, as set forth in greater detail below.

16. The word "malic" in malic acid derives from the Latin malum, for apple. Malic acid derived from natural fruit sources (usually apples) is commonly known as "L malic acid" instead of its scientific name, 2-Hydroxybutanedioic acid. L malic acid is quite expensive and is generally cost-prohibitive to use in mass-produced foods and beverages.

17. There is a synthetic or artificial version of malic acid derived from a petroleum substrate and other synthetic components. It is commonly referred to as DL malic acid, instead of its scientific name of d-hydroxybutanedioic acid. DL malic acid is manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

18. Federal regulations state explicitly that "DL-malic acid does not occur naturally." 21 C.F.R. § 184.1069(a).

19. Testing by an independent third-party laboratory revealed that the D isomer was present in the Defendant's products. This testing therefore establishes that the malic acid used in these Products is DL malic acid, and not L malic acid. And as stated explicitly in federal regulations incorporated as substantive state law, "DL-malic acid does not occur naturally." 21 C.F.R. § 184.1069(a).

20. Fruit flavors in a food are imparted by the interactions between sugars, acids, lipids, and various volatile compounds. The overall profile of a fruit flavor in a food is determined by the ratio between the sugars (mainly glucose and fructose) and acids, such as citric and malic acid. Fruits such as oranges and strawberries have their own natural ratio of sugars and acids.

21. That is, as a matter of food chemistry, there is no such flavor as "strawberry" or the like. Rather, there is a ratio between acids and sugars that is consistent with what the human tongue senses and understands as the flavor "strawberry," and that is naturally found in strawberries.

22. By adjusting the ratio between sugars and acids through the use of malic acid in foods and beverages, a manufacturer is enabled to create or simulate from scratch a "flavor" such as strawberry, through replication of the sugar/acid ratio present in strawberries in nature.

23. In addition, by adding malic acid to a food or beverage, the manufacturer is enabled to reinforce the characterizing fruit flavor of the food product. That is, food manufacturers are enabled to adjust or simulate the flavor notes of a fruit flavor such as strawberry, increasing the food product's commercial acceptability.

24. Federal regulations promulgated pursuant to the Food, Drug, and Cosmetic Act ("FDCA") require that a food's label accurately describe the nature of the food product and its characterizing flavors. 21 C.F.R. § 102.5(a).

25. Artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

26. Natural flavor is defined as "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents" from fruits or vegetables, "whose significant function in food is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

27. Any recognizable primary flavor identified directly or indirectly on the front label of a food product, whether by word, vignette, depiction of a fruit, or other means is referred to as a "characterizing flavor." 21 C.F.R. § 101.22.

28. If a food product's characterizing flavor is not created exclusively by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either natural or artificial flavorings or both. Specifically, if any component is present used that "simulates, resembles or reinforces" the characterizing flavor, the front label must prominently inform consumers that the product is "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

29. That is, pursuant to 21 C.F.R. § 101.22(i)(2) even if a food or beverage is flavored with strawberries, its label must state that it is "Artificially Flavored" if an artificial substance is used to reinforce the flavor profile of the food product.

8

30. A food product's label also must include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . . and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. § 102.5.

31. Such statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice.

32. That is, whenever a food manufacturer uses malic acid to simulate or reinforce the characterizing flavor of a food or beverage, it is required under federal regulations to state that the food or beverage is "Artificially Flavored" if the malic acid used to simulate or reinforce the characterizing flavor is DL malic acid.

33. By changing the ratio between sugars and acids that is naturally found in fruits, the DL malic acid used in the Products by Defendant reinforces, simulates, or creates the characterizing flavors, regardless of any other effect it may have or purpose for which it was included. The DL malic acid in the Products is therefore an "flavor" within the meaning of 21 C.F.R. § 101.22(i)(2) whose use must be disclosed through an "Artificially Flavored" statement on the front label if it is not derived from natural sources.

34. The fact that testing revealed differences in the concentration of DL malic between various tested flavors of the Products is also indicative of the use of DL malic as a flavor and not for some other purpose.

9

35. DL malic acid is an "artificial flavor" and not a "natural flavor" as those terms are defined at 21 C.F.R § 101.22(a)(1) and (a)(3) and corresponding state regulations, because it is not derived from a fruit or vegetable or any other natural source, but rather from a petroleum substrate. Therefore, pursuant to 21 C.F.R. § 101.22(i)(2) and corresponding state regulations, its use must be disclosed through an "Artificially Flavored" statement on the front label of the Products.

36. Further, the presence of artificial malic acid in the Products has a material bearing on price or consumer acceptance of the Products, and consumers may be and have been misled about the presence or absence of the artificial DL malic acid that is a component in the Product. See 21 C.F.R. § 102.5. Among the consumers misled about the presence of artificial malic acid in the Products are the Plaintiff, as set forth below.

37. Because the Products contain artificial flavoring, federal regulations and corresponding state laws incorporating and enacting those regulations require the Products to display both front- and back-label disclosures to inform consumers that the Products are artificially flavored. See 21 C.F.R. § 101.22(i)(2).

38. The Products have none of the required disclosures regarding the use of artificial flavors. In fact, the Products' front and back labels bear the false and deceptive statements that they are "Naturally Flavored" and contain only "Natural Flavor with Other Natural Flavors" which are reinforced by depictions of fruits.

10

39. Labels are the chief means by which food product manufacturers convey critical information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made on these labels.

40. Further, federal law and corresponding state law and regulations both reflect and create reasonable consumer expectations concerning the contents of foods and beverages. That is, consumers have been conditioned to expect that a food product that states that it is "Naturally Flavored" and contains "Natural Flavor with Other Natural Flavors" does not have its characterizing fruit flavors created, simulated, or reinforced by flavoring agents derived from petroleum substrates.

41. Plaintiff reviewed the labels on the Products prior to his purchases, and reviewed the flavoring claims being made on those labels. Plaintiff reasonably understood Defendant's "Naturally Flavored" and "Natural Flavor with Other Natural Flavors" statements, as well as its failure to disclose the use of artificially derived malic acid, to mean that the Products contain only natural flavorings. These representations were false.

42. Plaintiff reasonably relied on these label statements such that he would not have purchased the Products from Defendant if the truth about the Products was known, or would have only been willing to pay a substantially reduced price for the Products had they known that Defendant's representations regarding flavoring were false and misleading.

11

43. In the alternative, because of its deceptive and false labelling statements, Defendant was enabled to charge Plaintiff a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace.

44. Consumers including Plaintiff especially rely on label claims made by food product manufacturers such as Defendant, as they cannot confirm or disprove those claims simply by viewing or even consuming the Products. That is, consumers depend on food manufacturers to tell the truth about the characteristics of their products while making decisions about which products to buy and consume. Here, Defendant has not told the truth about the flavoring used in the Products.

45. Plaintiff suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury.

46. Defendant is in the best position to know what content it placed on its front and back labels and what chemicals and ingredients are in the Products.
   a. <u>Who</u>: Defendant made material misrepresentations of fact regarding the flavoring of the Products on both the front and back labels of the Products when it stated that the Products were contained "Natural Flavors" and "Natural Fruit Flavors." The labelling of these Products are entirely within the control of Defendant. These representations and omissions constitute material misrepresentation and omissions regarding the use of an artificial flavoring (specifically, DL malic acid) used to create, simulate, or reinforce the characterizing flavor of the Products.

12

b. <u>What</u>: Defendant knew, or should have known, that the DL malic acid used in the Products was an artificial flavoring. Defendant's conduct here was, and continues to be, fraudulent because it misrepresented that the Products purchased by Plaintiff contained "Natural Flavors" and "Natural Fruit Flavors" and thereby induced Plaintiff to purchase a Product he otherwise would not have purchased, or would have paid a lesser amount for.

c. <u>When</u>: Defendant made the material misrepresentations and omissions set forth herein during the prior three years to the filing of this matter, including prior to and at the time Plaintiff purchased the Products from Defendant, and continues to do so, despite Defendant's knowledge that the Products contained and continue to contain artificial flavorings.

d. <u>Where</u>: Defendant's misrepresentations and omissions, as set forth herein, were made on the Products' front and back labels, including the specific Product purchased by Plaintiff. This Complaint sets forth the precise misrepresentations made and includes an exemplar photograph of the Products' label containing these misrepresentations.

e. <u>How</u>: Defendant made material misrepresentations of fact and omissions on its front and back labels when it stated that the Products contained "Natural Flavors" and "Natural Fruit Flavors" despite the Products containing an artificial flavoring, DL malic acid, used to create, simulate, or reinforce the characterizing flavor of the Products within the meaning of 21 C.F.R. § 101.22(i)(2).

f. <u>Why</u>: Defendant made the material misrepresentations of fact and omissions as set forth herein in order to induce the purchase of the Products by those persons including Plaintiff who prefer to purchase food products that use only natural flavorings, or to induce those persons to purchase the Products at a higher price than they otherwise would have paid had the truth about the use of DL malic acid in the Products been known.

13

## V.  CAUSES OF ACTION - COUNT I
### Violations of RCW 19.86.020

47. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

48. Plaintiff brings this cause of action on behalf of himself.

49. RCW 19.86.020 provides, in pertinent part: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

50. Defendant made false and misleading statements by marketing the Products as being "Naturally Flavored" and containing "Natural Flavor with Other Natural Flavors" when in fact they contain the artificially manufactured flavoring DL malic acid.

51. In doing so, Defendant engaged in deceptive acts or practices in violation of RCW 19.86.020.

52. Defendant's deceptive acts or practices were materially misleading. Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff, about the quality of its Products, as discussed throughout.

53. Plaintiff was unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

14

54.     Defendant's actions set forth above occurred in the conduct of trade or commerce.

55.     The foregoing deceptive acts and practices were directed at consumers.

56.     Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because it fundamentally misrepresents the production and quality of the Products.

57.     Plaintiff suffered an ascertainable loss as a direct and proximate result of Defendant's RCW 19.86.020 violations in that (a) he would not have purchased the Products had he known the truth, and (b) he overpaid for the Products on account of the "Naturally Flavored" and "Natural Flavor with Other Natural Flavors" misrepresentations, as described herein.

58.     Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover his actual damages, reasonable attorney's fees and costs, and any other just and proper relief available under RCW 19.86.020.

59.     In taking the actions and omissions set forth above, and making the false promises, misrepresentations, concealments, suppressions, and omissions of material facts set forth above, Defendant violated RCW 19.86.020

## VI.   CAUSES OF ACTION - COUNT II
### Breach of Express Warranty

60.   Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

61.   Plaintiff brings this claim individually.

62.   Defendant, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products are "Naturally Flavored" and contain "Natural Flavor with Other Natural Flavors".

63.   Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiff.

64.   In fact, the Products do not conform to Defendant's representations and warranties because the Products contain artificially manufactured DL malic acid, a well-known artificial flavor. By falsely representing the Products in this way, Defendant breached its express warranty.

65.   As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff has been injured and harmed in an amount to be proven at trial because he would not have purchased the Products, or would have paid substantially less for them, had he known they contained a preservative.

16

## VII.   CAUSES OF ACTION - COUNT III
### Unjust Enrichment

66.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

67.     Plaintiff brings this claim individually.

68.     Plaintiff conferred benefits on Defendant by paying money to Defendant for the purchase of the Products.

69.     Defendant has knowledge of such benefits.

70.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's purchase of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Products are "Naturally Flavored" and contain "Natural Flavor with Other Natural Flavors" when in fact they contain DL malic acid, which is a known artificial flavor.

71.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff is unjust and inequitable, Defendant must pay restitution to Plaintiff as ordered by the Court.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, prays for judgment against Defendant as follows:

17

a.  Declaratory Relief: For an order declaring that Defendant's conduct violates the statutes and laws referenced herein, consistent with applicable law and pursuant to only those causes of action so permitted;

b.  Injunction: For an order requiring Defendant to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendant immediately cease and desist from selling the unlawful Products in violation of law; enjoin Defendant from continuing to market, advertise, distribute and sell the Products in the unlawful manner described herein; require Defendant to add appropriate warning labels or engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and take all further corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

c.  Damages/Restitution/Disgorgement: For an order awarding monetary compensation in the form of damages, restitution and/or disgorgement to Plaintiff, consistent with applicable law and pursuant to only those causes of action so permitted;

d.  Attorney Fees & Costs: For an order awarding attorney fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorney fees and costs to be awarded should Plaintiff prevail on any of his claims in this action.

RESPECTFULLY submitted this 12th day of December 2025, at Orcas, Washington.

_____
SCOTT ICEBERG
PLAINTIFF
PO BOX 27
ORCAS, WA 98280
scotticeberg@yahoo.com
360-333-2179

19